# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM H. POWDERLY, IV, )<br>)<br>Defendant. ) | No. 17 C 3262<br>Hon. Marvin E. Aspen |

## MEMORANDUM OPINION

MARVIN E. ASPEN, District Judge:

Before us is Plaintiff Commodity Futures Trading Commission's ("CFTC") motion for summary judgment, (Dkt. No. 26), and application for a supplemental order assessing a civil monetary penalty against Defendant William H. Powderly, IV, (Appl. (Dkt. No. 45)). For the reasons set forth below, we grant the application for a supplemental order assessing a civil monetary penalty against Powderly and deny the motion for summary judgment as moot.

## BACKGROUND

The CFTC filed a complaint against Powderly seeking injunctive and equitable relief, as well as imposition of civil penalties, for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1–26, and the CFTC regulations promulgated thereunder, 17 C.F.R. pts. 1–190. The complaint alleged that from January 2016 through October 2016, Powderly violated the anti-fraud provisions of the Act by fraudulently soliciting customers and prospective customers, claiming that he and a partner developed a "proprietary, multi-algorithmic commodity futures trading program that generated exceptional 'beta' testing results," including generating consistent gains without any daily losses. (*See* Compl. (Dkt. No. 1) ¶ 12.) The complaint

alleged these representations were untrue, as Powderly did not have a partner, and his actual trading results from January 2016 through October 2016 were consistently unprofitable as he suffered net trading losses approaching $1 million, and had never had a profitable month trading commodity futures for his account. (*Id.* ¶¶ 12, 17.) The CFTC alleged he never informed his customers or prospective customers about his actual trading results and instead falsely represented to them that his trading was "very profitable," including creating false futures commission merchant ("FCM") account statements showing net profits. (*Id.* ¶¶ 17–23.)

The CFTC moved for summary judgment on May 7, 2018. (Dkt. No. 26.) The parties thereafter jointly moved for the entry of a consent order for permanent injunction and other equitable relief against Powderly. (Dkt. No. 40.) We entered the consent order on September 11, 2018. (Consent Order (Dkt. No. 44).) The consent order made findings of fact and conclusions of law that Powderly violated the anti-fraud provisions of the Act, Sections 4b(a)(1)(A)–(C) and 6(c)(1), 7 U.S.C. §§ 6b(a)(1)(A)–(C) & 9(1), and Regulation 180.1(a), 17 C.F.R. § 180.1(a). (Consent Order ¶¶ 18–41.) According to the consent order, Powderly accepted a total of $1,278,000 from seven customers, and sustained net losses of approximately $1,027,425. (*Id.* ¶ 27.) In or about September 2016, Powderly claimed that the balance of his trading account was approximately $2 million. (*Id.* ¶ 29.) In fact, his balance fell to $513 by the end of that month, and Powderly falsely claimed to his customers that he sustained large losses over a period of a few days due to health issues. (*Id.* ¶ 30.) Powderly created false account statements to back up this false story. (*Id.* ¶ 31.) The consent order permanently enjoined Powderly from committing future violations of the commodities laws and instituted permanent registration and trading bans against Powderly. (*Id.* ¶¶ 40–41.) The

consent order also required Powderly to pay $1,069,300 in restitution, an amount equal to his defrauded customers' total net loss. (*Id.* ¶¶ 33, 40–51.)[1]

The consent order reserved the issue of civil monetary penalties. (*Id.* ¶ 52.) Should the CFTC request the Court to assess a civil monetary penalty, the consent order provides that:

> (a) Powderly will be precluded from arguing that he did not violate the federal laws as alleged in the Complaint; (b) Powderly may not challenge the validity of his consents and agreements herein or this Consent Order; (c) solely for the purpose of such request, the allegations of the Complaint and the Findings of Fact and Conclusions of Law in this Consent Order shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the request on the basis of affidavits, declarations, and documentary evidence.

(*Id.* ¶ 53.) The CFTC now requests a civil monetary penalty of $1,083,138 be assessed against Powderly, comprised of a statutory maximum per-violation penalty of $154,734 for each of the seven customers Powderly defrauded. (Appl. at 10.) The CFTC argues the penalty is "commensurate with the gravity of Powderly's offenses and the injury to each of his customers and furthers the Act's remedial and deterrence goals." (*Id.*)

## ANALYSIS

Pursuant to the Commodity Exchange Act, a court may impose a civil penalty "on any person found in the action to have committed any violation" of "not more than the greater of $100,000 or triple the monetary gain to the person for each violation." 7 U.S.C. § 13a–1(d)(1). The regulations adjust the statutory maximum per-violation penalty of $100,000 for inflation. For the period at issue, CFTC asserts the inflation-adjusted statutory civil monetary penalty was $154,734 per violation as of the filing of the complaint. *See* 17 C.F.R. § 143.8(a)(2)(B)(iii) (Jan. 23, 2017). The maximum penalty allowed "is limited by the number of violations alleged

---

[1] Powderly returned $208,700 of the $1,278,000 his customers invested, resulting in a total net loss of $1,069,300. (Consent Order ¶ 33.)

3

in the complaint times the maximum fine per violation." *Slusser v. Commodity Futures Trading Comm'n*, 210 F.3d 783, 786 (7th Cir. 2000).

"Sanctions in CFTC enforcement proceedings should be determined with regard to the gravity of the offense and the need for deterrence." *Monieson v. Commodity Futures Trading Comm'n*, 996 F.2d 852, 862 (7th Cir. 1993). The amount of any civil monetary penalty must be rationally related to the offense, which courts determine by weighing three factors: (1) the nature of the violations, (2) the existence of any injuries inflicted on others by reason of the violations, and (3) a review of the sanctions imposed for similar violations. *Id.* at 863–64.

The CFTC argues the fine should be tied to the number of individuals Powderly fraudulently solicited. (Appl. at 9–10.) The CFTC argues such a penalty "is commensurate with the gravity of Powderly's offenses and the injury to each of his customers," while furthering the Act's remedial and deterrence goals. (*Id.* at 10.) It contends that it could request a much larger penalty under the Act, as we could assess a statutory penalty with regard to every false statement, omission, or false report made by Powderly as alleged in the complaint, resulting in many multiples of $154,734. (*Id.* at 9.)

In contrast, Powderly argues we should focus on the lack of financial gain in this case, asserting that the penalty the CFTC seeks is disproportionate to penalties sought in similar cases. (Resp. (Dkt. No. 47) at 3–5.) He contends that the CFTC "overreaches" and seeks a civil penalty that is greater than the alleged losses, "making the civil monetary penalty irrational and totally unrelated to the alleged offenses and harm suffered." (Resp. at 4–5.) Powderly also argues we may properly consider his ability to pay in imposing a civil penalty and contends his failing health and negative net worth counsel against a steep penalty. (*Id.* at 5–7.)

There is no dispute Powderly's fraudulent conduct was serious. Over the course of nearly a year, Powderly violated the anti-fraud provisions of the Act, including Sections 4b(a)(1)(A)–(C) and 6(c)(1), 7 U.S.C. §§ 6b(a)(1)(A)–(C) & 9(1), along with Regulation 180.1(a), 17 C.F.R. § 180.1(a), by fraudulently soliciting customers and prospective customers and creating false account statements and false FCM statements for his trading account in order to conceal his trading losses and prevent his investors from taking remedial actions. (*See* Consent Order ¶¶ 36–38.) *See U.S. Commodity Futures Trading Comm'n v. Li*, No. 15 C 5839, 2016 WL 8256392, at *8 (N.D. Ill. Dec. 9, 2016) (finding fraudulent and fictitious trades undermine public confidence in the commodities markets and "cut[] to the heart of the purpose of the Act: to protect 'all market participants from fraudulent or other abusive sales practices and misuses of customer assets'" (quoting 7 U.S.C. § 5(b))).

Furthermore, Powderly's investors suffered significant injuries due to his fraudulent conduct. Powderly lost more than $1 million of the $1,278,000 that he fraudulently solicited from seven investors. (*See* Consent Order at ¶ 33.) One of Powderly's customers, who took out loans in order to invest $350,000 with Powderly's trading operation, lost more than $250,000 of his investment. (Decl. of S.A. (Dkt. No. 27–2).)[2] Another investor entrusted Powderly with $100,000 from a civil settlement that she planned to use for retirement; she lost the entire principal investment to Powderly's failed scheme. (Decl. of K.K. (Dkt. No. 25–5).) Yet another investor, who initially contributed $150,000 to Powderly's trading account, was induced to

---

[2] The consent order expressly allows us to "determine the issues raised in the request [for civil monetary penalty] on the basis of affidavits, declarations, and documentary evidence." (Consent Order ¶ 53.) The CFTC submitted this declaration and others cited herein as part of its summary judgment motion, (Dkt. No. 26), and bases certain arguments on these declarations in its application for civil monetary penalty, (Appl. at 5–6). Powderly does not contest the use of these declarations in his response to the CFTC's application for civil monetary penalty.

contribute an additional $100,000 based on false reports of high returns that never materialized; this investor lost his entire investment. (Decl. of V.S. (Dkt. No. 27–4).)

Given the seriousness of the violations and the harm caused, a civil monetary penalty is warranted against Powderly. However, Powderly contends that the CFTC's request is disproportionate when compared with penalties imposed in similar cases. (Resp. at 3–5 (citing *U.S. Commodity Futures Trading Comm'n v. Ross*, No. 09 C 5443, 2014 WL 6704572 (N.D. Ill. Nov. 26, 2014); *U.S. CFTC v. Gillons*, 2015 U.S. Dist. LEXIS 176003, *1 (Dec. 8, 2015); *In re Kinseth and Virtual Vision Inc.*, 2012 CFTC LEXIS 15, *2, Comm. Fut. L. Rep. (CCH) P32,128 (Feb. 23, 2012); *In re Russo*, 2012 CFTC LEXIS 70, *2, Comm. Fut. L. Rep. (CCH) P32,432 (Oct. 26, 2012)).) Powderly also argues he did not have a financial gain, and therefore, a civil monetary penalty is unwarranted—or at the very least, should be significantly lower than the CFTC's request. (Resp. at 3.)

The maximum allowable penalty in this case would be $154,734 multiplied by the total number of violations alleged in the complaint. *Slusser*, 210 F.3d at 786. The CFTC suggests a penalty equal to the statutory penalty multiplied by seven, the number of investors harmed, totaling $1,083,138. (Appl. at 9.) As the CFTC has observed, the complaint alleged each material misrepresentation or omission, false statement or report, or manipulative or deceptive act "as a separate and distinct violation of the Act." (Appl. at 9.) Multiplying the per-violation penalty by the total violations alleged would result in a much larger penalty than the $1,083,138 requested by the CFTC. A review of Count II of the complaint demonstrates this fact. Count II alleges Powderly violated Section 4b(a)(1)(B) of the Act by willfully making and sending to his customers false FCM statements that misrepresented his account balances and concealed his considerable losses. (Compl. ¶ 31.) "Each false report or statement made . . . is alleged as a

separate and distinct violation" of the Act in Count II. (*Id.* ¶ 33.) The complaint further alleges that, to hide his losses in September 2016, Powderly created false FCM account statements for both August and September 2016 and sent them to his customers. (*Id.* ¶ 21.) By our count, given seven investors and prospective investors, these allegations sum to as many as fourteen separate violations of the Act. This does not take into account the many separate violations alleged through the other counts in the complaint. Based on this, Powderly was on notice of a potential penalty reflecting several multiples of the maximum per-violation amount. *See Slusser*, 210 F.3d at 786 (assessing the number of violations by how many a reasonable person in the defendant's position would have assumed to be the maximum exposure on the face of the complaint). Consolidating the harm done into one violation per defrauded customer therefore appears more than reasonable. *See, e.g.*, *Commodity Futures Trading Comm'n v. Levy*, 541 F.3d 1102, 1111 n.9 (11th Cir. 2008) (district court properly exercised discretion by electing to treat all violations as a single violation per customer, thus reducing the total penalty by a multiple of five).

Powderly's attempts to demonstrate that this penalty is disproportionate are inapposite. For example, he contends that the requested penalty in this case is out of step with *Ross*, where the court imposed a $1,300,000 penalty after Defendant solicited 93 fund participants who lost $7 million. (Resp. at 3.) However, in considering the relevant factors and imposing a penalty, the court applied the (then-applicable) statutory penalty of $130,000 for the ten substantive provisions of the Act and regulations that the defendant violated. *See Ross*, 2014 WL 6704572, at *3. Powderly violated five substantive provisions of the Act and regulations. (*See* Consent Order ¶¶ 36–38.) Were we to apply the *Ross* formula here, we would multiply the statutory penalty by five, not substantially less than the CFTC's proposed multiple of seven for

7

each defrauded customer. Nor do the other cases Powderly relies on support his position that a $1,083,138 penalty here is disproportionate. *See Gillons*, 2015 U.S. Dist. LEXIS 176003, at *1 (entering consent order including a $1,000,000 penalty without discussing the basis for the penalty); *In re Kinseth*, 2012 CFTC LEXIS 15, at *2, Comm. Fut. L. Rep. (CCH) P32,128 (entering order including a $575,000 penalty without discussing the basis for the penalty); *In re Russo*, 2012 CFTC LEXIS 70, at *2, Comm. Fut. L. Rep. (CCH) P32,432 (entering order including a $645,000 penalty without discussing the basis for the penalty).

Powderly argues that the CFTC's suggested penalty is "irrational and totally unrelated to the alleged offenses and harm suffered" because the penalty sought is greater than the loss sustained. (Resp. at 4–5.) However, penalties under the Act routinely outstrip the dollar value of the harm done. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Regan*, No. 11-CV-08679, 2012 WL 2308368, at *8–9 (N.D. Ill. May 29, 2012) (assessing civil penalty at twice the amount of restitution); *U.S. Commodity Futures Trading Comm'n v. Garofalo*, No. 10-CV-2417, 2011 WL 4954082, at *7 (N.D. Ill. May 5, 2011) (setting penalty at three times the losses to the victims, which equaled the ill-gotten gain to the defendant). When a defendant experiences financial gain, the Act authorizes a penalty three times that gain. 7 U.S.C. § 13a–1(d)(1)(A). The CFTC's suggestion pegs the penalty at one statutory amount per victim, fulfilling the requirement that the penalty be "rationally related to the offense." *Monieson*, 996 F.2d at 864.

Powderly argues that we should consider his ability to pay in assessing a penalty. Powderly submits a declaration attesting to a negative net worth of $388,500. (Dkt. No. 47–2.) We are not required to consider collectability in imposing a civil monetary penalty. *Brenner v. C.F.T.C.*, 338 F.3d 713, 723 (7th Cir. 2003) (explaining that following the 1992

amendments to 7 U.S.C. § 9a, "the financial worth of the defendant or the collectibility of any fine are no longer relevant considerations" for the CFTC in imposing civil penalties); *see also Li*, 2016 WL 8256392, at *10 n.7 (citing *Brenner* and finding ability to pay should not be considered in court's decision to impose civil penalties under § 13a–1(d)); *U.S. Commodity Futures Trading Comm'n v. Sarvey*, No. 08 C 192, 2012 WL 426746, at *6 (N.D. Ill. Feb. 10, 2012) (same).

Powderly urges us to adopt the rationale of *U.S. Commodity Futures Trading Comm'n v. Reisinger*, No. 11-CV-08567, 2017 WL 4164197, at *10–11 (N.D. Ill. Sept. 19, 2017), *vacated on other grounds* (N.D. Ill. Sept. 25, 2018). (Resp. at 5.) However, even following the reasoning of *Reisinger*, a defendant's ability to pay is not dispositive, but rather "merely allows the penalty to fit the wrong and the wrongdoer." *Reisinger*, 2017 WL 4164197, at *11. As we have discussed, the wrong here is serious. Powderly's fraudulent actions have not only undermined public confidence in commodities markets. *See Li*, 2016 WL 8256392, at *9 (observing that violations "harm[] the public trust in the markets, which Congress has set out to promote and protect"). He also caused substantial harm to his seven investors, who were taken in by his repeated acts of fraud and collectively lost more than $1 million.

Accordingly, we find that Powderly's conduct warrants a civil monetary penalty of $1,083,138, plus post-judgment interest. 28 U.S.C. § 1961 ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.")

## CONCLUSION

We hereby grant the CFTC's application for a supplemental order assessing a civil monetary penalty of $1,083,138 against Powderly. (Dkt. No. 45.) The supplemental order will

be filed separately. As the consent order and this opinion resolve the entire matter before us, we deny the CFTC's motion for summary judgment as moot. (Dkt. No. 26.) It is so ordered.

                                                                                               _/s/ Marvin E. Aspen_
                                                           Honorable Marvin E. Aspen
                                                           United States District Judge

Dated:  March 5, 2019
         Chicago, Illinois